IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JEFFREY L. MANCUSO                                    PLAINTIFF

v.                             CIVIL NO. 04-2179

JO ANNE B. BARNHART, Commissioner
Social Security Administration                                    DEFENDANT

**MEMORANDUM OPINION**

Plaintiff Jeffrey L. Mancuso brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security Act (Act).

**Procedural Background:**

The applications for DIB and SSI presently before this court were filed on June 16, 2003, alleging an inability to work since January 12, 2003, due to stomach problems, GERD, asthma and sinus problems and Bi-Polar disorder. (Tr. 56-59, 198-201). An administrative hearing was held on April 7, 2004. (Tr. 215-253). Plaintiff was present and represented by counsel.

By written decision dated June 7, 2004, the ALJ found that plaintiff has an impairment or combination of impairments that are severe. (Tr. 24). However, after reviewing all of the evidence presented, he determined that plaintiff's impairments do not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 24). The ALJ found plaintiff retained the residual functional capacity

(RFC) to perform work involving understanding, remembering and carrying out simple one to two step task-oriented, as opposed to production oriented, instructions and/or tasks; and work involving no more than incidental contact with the general public, co-workers or supervisors. (Tr. 23-24). The ALJ, with the use of vocational expert testimony, found plaintiff can perform his past relevant work as a spot welder and a hospital food preparer. (Tr. 23-24).

Plaintiff appealed the decision of the ALJ to the Appeals Council. Plaintiff's request for review of the hearing decision by the Appeals Council was denied on July 22, 2004. (Tr. 6-9). When the Appeals Council declined review, the ALJ's decision became the final action of the Commissioner. Plaintiff now seeks judicial review of that decision. (Doc. #1). Both parties have submitted appeal briefs and this case is before the undersigned pursuant to the consent of the parties. (Doc. #'s 9,10).

**Evidence Presented:**

At the time of the administrative hearing before the ALJ on April 7, 2004, plaintiff was forty-one years of age and obtained a high school education. (Tr. 221-222). The record reflects plaintiff's past relevant work consists of work as a sales clerk, a welder, and a dietary aide at a nursing home. (Tr. 223- 225, 227). Plaintiff testified that he has a current driver's license and is able to drive. (Tr. 228-229).

Plaintiff testified that he has problems with his stomach. (Tr. 228). When he has a flare-up, plaintiff testified he is bedridden. (Tr. 228). Plaintiff reported that he seeks treatment through the Good Samaritan Clinic and has been prescribed Nexium and Prozac.

Plaintiff testified that he does not sleep well due to his stomach problems. (Tr. 229). As for activities, plaintiff testified he does his normal household chores including laundry, cleaning

2

his room and doing yard work. (Tr. 229). Plaintiff testified that he had to move in with his mother because he could not afford to live on his own. (Tr. 230).

Plaintiff testified he is unable to work due to a combination of stomach and mental problems. (Tr. 230). Plaintiff, who indicated that he was sweating at the hearing, testified that when he is nervous he will start to sweat and then he will experience a flare-up of his stomach problem. (Tr. 230). Plaintiff testified that he has difficulty being around people, in crowds and around noises or around strangers. Plaintiff testified he is able to "get by" when he is around family or familiar people. (Tr. 231). Plaintiff testified that he does go shopping at the convenience store and the super center and that he sometimes gets nervous in these places. (Tr. 231). When this happens, plaintiff testified that he goes outside. When asked how often he experiences panic attacks, plaintiff testified every day. (Tr. 233).

Plaintiff testified that he was also told his blood sugar was high and that he needed to go to the clinic for an evaluation of this problem. (Tr. 237).

Ms. Patricia Bruso, plaintiff's mother, testified that plaintiff accurately described his problems and that there are times when plaintiff will stay in his room for days. (Tr. 238). Ms. Bruso testified she has seen her son try to work a normal job but just cannot do it. (Tr. 239).

Ms. Consetta Duty, plaintiff's girlfriend, testified plaintiff's problems have worsened. (Tr. 239). She explained that there have been times she and plaintiff had to leave a restaurant because plaintiff had stomach problems. (Tr. 240). She explained that plaintiff sweats often and has even had to change the sheets because he "soaked" them. (Tr. 240).

Ms. Tanya Owen, a vocational expert, testified plaintiff's past relevant work consists of work as a food service worker which is considered medium, unskilled work; a sales clerk which

3

is considered light, semi-skilled work; and a welder which is considered medium, unskilled work. (Tr. 241-242). After listening to the ALJ's hypothetical questions, Ms. Owen testified plaintiff would be able to perform his past relevant work. (Tr. 242-245). If plaintiff was to be found credible, Ms. Owen testified there would be no work that he could perform. (Tr. 251).

The pertinent medical evidence in this case reflects the following. From May 2002, through August 2003, plaintiff presented to the St. Edwards Mercy Medical Center emergency room. (Tr. 145-165). In May 2002, plaintiff cut his left index finger on a vegetable slicer. (Tr. 165). Staff physicians repaired the damaged digit with a series of four-stitch sutures and sent plaintiff home with instructions to watch for signs of infection. In August and October 2002, plaintiff complained of abdominal pain. (Tr. 154-160). On both visits ultrasound examinations were performed and with the exception of a fatty liver all other organs were normal. (Tr. 154, 159). In November of 2002, plaintiff was treated for a sinus headache. (Tr. 151). In May 2003, plaintiff presented with complaints of ear pain and shortness of breath. (Tr. 148-149). Plaintiff was diagnosed with bilateral otitis media and a subacute exacerbation of asthma. Plaintiff was taught how to use an albuterol MDI and given medication for four days. (Tr. 148). In July of 2003, plaintiff sought treatment for an ankle injury. (Tr. 147). An x-ray revealed no fractures or osseous abnormality. On August 27, 2003, plaintiff sought treatment for a swollen left jaw and for anxiety and depression. (Tr. 145). The examiner opined plaintiff had a submandibular gland obstruction and advised plaintiff to follow-up with a specialist. Plaintiff was instructed to call the next morning to set up an appointment with an ENT. (Tr. 145).

On August 21, 2002, plaintiff complained of having a depressed mood and wanted to change his medication. (Tr. 126). Plaintiff also reported major heartburn, rectal bleeding and

4

GERD symptoms. After examining plaintiff, Dr. Dan Asbury's assessment indicated GERD vs. gallbladder disease, anxiety and bright red blood per rectum. Plaintiff was instructed to discontinue smoking, elevate his head in bed, lose weight and decrease sodium in his diet. He was also started on Nexium and Prozac. The notes indicate plaintiff was given samples of Nexium because he was unable to afford the medication. (Tr. 126).

On September 6, 2002, plaintiff reported his rectal bleeding had stopped. (Tr. 127). Plaintiff reported he was doing pretty well. Dr. Asbury noted plaintiff "subjectively feels a lot better." Plaintiff's blood pressure was noted to be a bit elevated. Plaintiff continued to smoke. Dr. Asbury opined that plaintiff's GERD was "much improved" and that plaintiff needed to be treated for high blood pressure. Plaintiff was instructed to take Diovan and Nexium for three months and then to discontinue using the medication. He was also instructed to lose weight and to stop smoking.

On May 25, 2003, plaintiff entered the Sparks Regional Medical Center emergency room complaining of shortness of breath, a productive cough and no appetite. (Tr. 129). Plaintiff was diagnosed with an acute exacerbation of asthma. (Tr. 131). An x-ray showed plaintiff's lungs were free of lobar or segmental infiltrates and his heart was normal. (Tr. 134). Plaintiff left against medical advice. (Tr. 131).

On August 13, 2003, plaintiff underwent a consultative general physical examination performed by Dr. Gordon W. McCraw. (Tr. 135-141). Plaintiff reported that he had not received treatment from a psychiatrist but that he had been prescribed Prozac. (Tr. 137). Dr. McCraw noted plaintiff could hear normal voices but he had a fifty percent loss of hearing in his left ear. Dr. McCraw noted a slight oropharynx impairment but noted plaintiff's speech was okay. (Tr.

AO72A
(Rev. 8/82)

137). Plaintiff was found to have a full range of motion in his spine and extremities. (Tr. 138-139). Plaintiff was neurologically intact and no muscle weakness or atrophy was observed. Dr. McCraw noted plaintiff could hold a pen, touch fingers to palm, grip seventy-five percent of normal, oppose thumb to fingers, pick up a coin, stand and walk without assistive devices, walk on heel and toes and squat and arise from a squatting position. (Tr. 139). Dr. McCraw noted plaintiff was oriented to time, person and place and did not observe any evidence of psychosis. He diagnosed plaintiff with GERD and depression. Dr. McCraw opined plaintiff had no limitations in his ability to walk, stand, sit, lift, carry, handle, finger, see, hear or speak. (Tr. 141).

On August 19, 2003, plaintiff underwent a consultative mental status and evaluation of adaptive functioning testing performed by Dr. Douglas A. Brown. (Tr. 142-144). The doctor reported that by history plaintiff had not undergone any psychiatric treatment, but after he was released from prison he was required to attend a Court ordered treatment program for sexual predators. (Tr. 242).

Upon examination, Dr. Brown reported plaintiff was pleasant and somewhat anxious and hyperactive; he was spontaneous, with clear, coherent, logical and relevant thought patterns; he showed no evidence of delusions, obsessions, or unusual powers, although he alleged he heard voices; and he appeared depressed, but had no thoughts of suicide or homicide. (Tr, 142-143). Plaintiff reported that he was always tired and that his mind never shut down. (Tr. 143). In the evaluation of plaintiff's adaptive functioning, regarding communication, Dr. Brown observed no limitations in speech or language and opined plaintiff communicated effectively. Dr. Brown noted plaintiff lived with his girlfriend and that he stayed home a lot because there was "nothing to do in Fort Smith." (Tr. 144). With regard to personal responsibility, Dr. Brown opined

6

plaintiff had no limitations. Dr. Brown noted plaintiff was obese and his concentration, persistence and pace was "somewhat distracted." Dr. Brown estimated plaintiff's I.Q. to be 80 or greater. Dr. Brown opined plaintiff's ability to understand, carry out and remember detailed instructions was intact so long as he did not become severely depressed and that work pressure could be overwhelming. (Tr. 144).

On August 25, 2003, Dr. Kimberly G. Adametz, a non-examining, medical consultant opined plaintiff did not have a severe physical impairment. Dr. Adametz's assessment was affirmed by Dr. Jerry L. Thomas on November 26, 2003. (Tr. 166-167).

On September 17, 2003, Dr. Brad Williams, a non-examining medical consultant, completed a Psychiatric Review Technique Form (PRTF). (Tr. 168-181. Dr. Williams opined plaintiff had mild restrictions of his activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties maintaining concentration, persistence or pace; and no episodes of decompensation, each of extended duration. (Tr. 178). Dr. Williams also completed a mental RFC assessment stating that plaintiff has moderate limitations in the following areas: in his ability to understand and remember detailed instructions; in his ability to carry out detailed instructions; in his ability to maintain attention and concentration for extended periods; in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; in his ability to accept instructions and respond appropriately to criticism from supervisors; and in his ability to set realistic goals or make plans independently of others. (Tr. 182-185). Dr. Williams opined that plaintiff is "able to perform work where interpersonal contact is incidental to work performed, e.g., assembly work; complexity of tasks is learned and

performed by rote, few variables, little judgement; and supervision required is simple, direct and concrete." (Tr. 184).

Progress notes dated December 29, 2003, report plaintiff's complaints of stomach problems and right upper chest pain. (Tr. 194). Plaintiff also reported having black stools. Plaintiff was diagnosed with dyspepsia, GERD and melena. Plaintiff was re-started on Nexium.

Progress notes dated February 18, 2004, report plaintiff's history of stomach problems. (Tr. 193). Plaintiff reported that Nexium helped. Dr. Robert Baker noted plaintiff's main problem was reflux and that he used pepcid at night.

On March 16, 2004, plaintiff indicated he needed a prescription for Prozac. (Tr. 191). Treatment notes indicate plaintiff denied suicidal ideation and that his affect was normal. The assessment indicates plaintiff's history of depression. Plaintiff was given a prescription for Prozac. (Tr. 192).

On March 29, 2004, Dr. Brown completed a medical assessment of ability to do work-related activities (mental) form. Dr. Brown opined plaintiff's ability to make occupational adjustments was good to fair, except in work stresses and attention. (Tr. 187-188). Dr. Brown opined plaintiff's ability to make performance adjustment was good to fair. With regard to personal-social adjustments, Dr. Brown opined plaintiff had a fair ability to maintain appearance and demonstrate reliability and a poor to no ability to behave in an emotionally stable manner or to relate predictably in social situations.

**Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir.

2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALL's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALL, the decision of the ALL must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)©). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or

9

mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his residual functional capacity. *See McCoy v. Schwieker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. §§ 404.1520, 416.920.

## **Discussion:**

We first address the ALJ's assessment of plaintiff's subjective complaints. The ALJ was required to consider all the evidence relating to plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the United States Court of Appeals for the Eighth Circuit recently observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart,* 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly evaluated plaintiff's subjective complaints. Although plaintiff contends that his alleged stomach problems, Bi-Polar disorder and depression are disabling, the evidence does not support this contention.

10

With regard to plaintiff's alleged stomach problems, the record does show plaintiff has sought treatment for stomach pain and GERD symptoms. Plaintiff underwent abdominal ultrasounds in August and October of 2002, which with the exception of revealing a fatty liver, were normal. Plaintiff also reported that his symptoms were much improved with the use of Nexium. We note, an impairment which can be controlled by treatment or medication is not considered disabling. *See Estes v. Barnhart,* 275 F.3d 722, 725 (8th Cir. 2002) (citations omitted).

Plaintiff also alleges disabling depression and anxiety. A review of the record does show plaintiff has been prescribed medication to treat depression and anxiety, but there is no evidence that plaintiff sought treatment from a mental health professional on his own accord or through the referral of another physician. *See Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (holding that lack of evidence of ongoing counseling or psychiatric treatment for depression weighs against plaintiff's claim of disability). While plaintiff alleges that he has difficulty being around people, with the exception of reporting this problem to Dr. Brown, the consultative examiner, there is no indication plaintiff reported these alleged problems with a medical professional.

Plaintiff's subjective complaints are also inconsistent with evidence regarding his daily activities. In a Supplemental Interview Outline dated July 6, 2003, plaintiff indicated he was able to take care of his personal needs; with the exception of taking out the trash, was unable to perform household chores; was able to shop for groceries and clothes and go to the bank and Post Office; and was able to prepare meals, pay bills, drive, watch television, listen to the radio, read, visit with friends and relatives and work in his workshop. (Tr. 72-73). In August of 2003, plaintiff reported to Dr. Brown that he was able to bathe, dress, feed himself, drive, shop, handle

11

finances, clean, do dishes, wash laundry and chauffeur. (Tr. 144). At the hearing in April of 2004, plaintiff testified that he was able to do household chores and yard work. This level of activity belies plaintiff's complaints of pain and limitation and the Eighth Circuit has consistently held that the ability to perform such activities contradicts a plaintiff's subjective allegations of disabling pain. *See Hutton v. Apfel*, 175 F.3d 651, 654-655 (8th Cir. 1999) (holding ALJ's rejection of claimant's application supported by substantial evidence where daily activities–making breakfast, washing dishes and clothes, visiting friends, watching television and driving-were inconsistent with claim of total disability).

The ALJ also considered side effects from prescribed medication. In this case, there was no indication in the medical record that plaintiff complained of, or sought adjustment of his prescription of Prozac because of adverse side effects.

Further, the ALJ also considered the testimony of plaintiff's mother and girlfriend. After hearing their testimony, however, the ALJ properly concluded that their testimony was not fully credible. As the testimony of family members and friends need only be given consideration and need not be considered credible, the ALJ properly discredited the testimony of the witnesses. *Lawrence v. Chater*, 107 F.3d 674, 677 (8th Cir. 1997).

Therefore, although it is clear that plaintiff suffers with some degree of discomfort, he has not established that he is unable to engage in any gainful activity. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability). Neither the medical evidence nor the reports concerning his daily activities support plaintiff's contention of total disability. Accordingly, we conclude that

substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints were not totally credible.

We next turn to the ALJ's assessment of plaintiff's RFC. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. *Id*. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect [his] RFC." *Id*.

In the present case, the ALJ considered a medical assessment prepared by a non-examining agency medical consultants, the medical statements completed by Dr. Brown, plaintiff's subjective complaints, and his medical records.

The ALJ addressed Dr. Brown's medical assessment opining plaintiff's ability to make occupational adjustments was good to fair, except in work stresses and attention; that plaintiff's ability to make performance adjustment was good to fair; and that with regard to personal-social adjustments, plaintiff had a fair ability to maintain appearance and demonstrate reliability and a poor to no ability to behave in an emotionally stable manner or to relate predictably in social situations. *Anderson v. Barnhart*, 344 F.3d 809, 813 (8th Cir. 2003) (holding that ALJ did not err

13

in failing to credit treating physician's opinion because those opinions were inconsistent and not fully supported by medical evidence); *See Chamberlain v. Shalala*, 47 F.3d 1489, 1494 (8th Cir. 1995) (while treating physicians' opinions are ordinarily entitled to great weight, they are not conclusive and must be supported by medically acceptable clinical or diagnostic data). The ALJ points out Dr. Brown's March 2004, assessment, is inconsistent with his one-time evaluation notes indicating plaintiff retained a mildly restrictive level of adaptive functioning. It is the ALJ's function to resolve conflicts among the various treating and examining physicians and based on the above discussion and the record as a whole, we find substantial evidence in the record to support the ALJ's findings that plaintiff can perform the RFC listed above. *Vandenboom v. Barnhart*, 04-3167,WL 1421695, 3-4 (8th Cir. June 20, 2005) (citations omitted).

Finally, we believe substantial evidence supports the ALJ's conclusion that plaintiff can return to his past relevant work as a spot welder and a food preparer. According to the Commissioner's interpretation of past relevant work, a claimant will not be found to be disabled if he retains the RFC to perform:

> 1. The actual functional demands and job duties of a particular past relevant job; *or*
> 2. The functional demands and job duties of the occupation *as generally required by employers throughout the national economy*.

20 C.F.R. § 404.1520(e); S.S.R. 82-61 (1982); *Martin v. Sullivan*, 901 F.2d 650, 653 (8th Cir. 1990)(expressly approving the two part test from S.S.R. 82-61).

Therefore, even if a claimant cannot perform the actual demands of his particular past job, if he can carry out his job as it is generally performed in the national economy, he is not disabled under the regulations. *Evans v. Shalala*, 21 F.3d 832, 834 (8th Cir. 1994). We note in this case

14

the ALJ relied upon vocational expert testimony. *See Gilbert v. Apfel,* 175 F.3d 602, 604 (8th Cir. 1999) ("The testimony of a vocational expert is relevant at steps four and five of the Commissioner's sequential analysis, when the question becomes whether a claimant with a severe impairment has the residual functional capacity to do past relevant work or other work") (citations omitted). Accordingly, the ALJ properly concluded that plaintiff could perform his past relevant work.

**Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

DATED this 26th day of September 2005.

/s/ Beverly Stites Jones
HON. BEVERLY STITES JONES
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)

AO72A
(Rev. 8/82)